O'CONNOR, REDD & SKLARIN, LLP
Richard S. Sklarin (RSS 1017)
200 Mamaroneck Avenue
White Plains, New York 10601
(914) 686-1700
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLYDA WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>MID-HUDSON ADDICTION RECOVERY CENTER, INC., FLORENCE MANOR COMMUNITY RESIDENCE, MID-HUDSON ALCOHOLISM RECOVERY CENTER, INC., STEVEN PRESSMAN and KAREN LAFFLER<br><br>Defendants. | Civil Action No. 05-6936 (GAY)<br><br>NOTICE OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>RETURN DATE: SEPTEMBER 14, 2006<br><br>ELECTRONICALLY FILED |

**PLEASE TAKE NOTICE** that on September 14, 2006, at 10:00 a.m., or as soon thereafter as counsel may be heard, the Defendants, by their attorneys, O'Connor, Redd,& Sklarin, LLP, shall Cross-Move before the Honorable George A. Yanthis, U.S.M.J., in the United States District Court, Southern District of New York, pursuant to F.R.C.P. 56, for an Order, granting the defendants' Cross-Motion for Summary Judgment, dismissing Plaintiff's Complaint in its entirety as a matter of law.

**PLEASE TAKE FURTHER NOTICE** that in support of the Cross-Motion, the undersigned shall rely upon the accompanying Brief in Support of the Cross-Motion for Summary Judgment, Statement of Material Facts, the Declaration of Richard S. Sklarin in Support of the Cross-Motion for Summary Judgment and the attached exhibits, and the

proposed form of Order.

**O'CONNOR, REDD & SKLARIN, LLP**

By: _____

Richard S. Sklarin (RSS 1017)
Attorneys for Defendants
200 Mamaroneck Avenue
White Plains, New York 10601
(914) 686-1700

**DATED:**   August 14, 2006
White Plains, New York

O'CONNOR, REDD & SKLARIN, LLP
Richard S. Sklarin  (RSS 1017)
200 Mamaroneck Avenue
White Plains, New York 10601
(914) 686-1700
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| CLYDA WILLIAMS, | Civil Action No. 05-6936 (GAY) |
|---|---|
| Plaintiff, | |
| v. | MOTION RETURN DATE: SEPTEMBER 14, 2006 |
| MID-HUDSON ADDICTION RECOVERY CENTER, INC., FLORENCE MANOR COMMUNITY RESIDENCE, MID-HUDSON ALCOHOLISM RECOVERY CENTER, INC., STEVEN PRESSMAN and KAREN LAFFLER | ELECTRONICALLY FILED |
| Defendants. | |

----------------------------------------------------------------------------------------------------

BRIEF IN SUPPORT OF DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT

----------------------------------------------------------------------------------------------------

O'CONNOR, REDD & SKLARIN, LLP
By: Richard S. Sklarin
Attorneys for Defendants
200 Mamaroneck Avenue
White Plains, New York 10601
(914) 686-1700

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

**ARGUMENT**

    DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE
    GRANTED IN ITS ENTIRETY.............................................................................5-11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## PRELIMINARY STATEMENT

Defendants herein cross-move for an Order granting summary judgment in accordance with F.R.C.P. 56 dismissing plaintiff's Complaint is its entirety.

1

## STATEMENT OF FACTS

The Court is respectfully referred to the Statement of Material Facts (pursuant to Local Civil Rule 56.1) and exhibits in support of defendants' Cross-Motion for Summary Judgment annexed to the Declaration in Support of Cross-Motion of Richard S. Sklarin.

The crux of this employment discrimination action is plaintiff seeking to recover damages against defendants "... for unlawful discrimination, termination, hostile work environment and retaliation based upon Plaintiff's race and color, in violation of Title VII...42 U.S.C. §1981... and the New York State Human Rights Law..." See paragraph 2 of plaintiff's Complaint.

It is undisputed that the entire lawsuit is predicated upon plaintiff allegedly being called an "ignorant black nigger" during **one** September 29, 2004 telephone call initiated by plaintiff to her direct supervisor, Karen Laffler (which she adamantly denies and has been corroborated by no one) in what was admittedly a breach of plaintiff's ethical responsibilities in her position as Assistant Program Director of the Florence Manor Facility for the Mid-Hudson Addiction Recovery Center, Inc.

Contrary to plaintiff's assertions, as the documentary evidence and deposition testimony before this Court make clear, plaintiff's assertion of an admittedly egregious racial epitaph (if it had been said which has been adamantly denied) purportedly spoken on **one** occasion (by telephone to someone not even at her work location) only surfaced after she had experienced mounting professional difficulties in performing her new job

2

responsibilities as Assistant Program Director and less than two weeks into her job tenure (including contemporaneous notes to this effect in her therapist records as well as one in person verbal discussion and two internal memoranda from her supervisor detailing her poor performance and inability to handle the day to day job responsibilities of her new position).

It is uncontroverted that the allegation of the racial epitaph being spoken by Laffler was only brought to the attention of Executive Director Steven Pressman after these ongoing performance problems (again, less than a few weeks into the 3 month probationary period of her position) arose.

Nevertheless, about a week after a requested meeting held by Steven Pressman with both the plaintiff and Karen Laffler, in an effort to address the alleged derogatory racial remark and work towards building a relationship of trust in the future performance of their job responsibilities at Florence Manor (during which time, it turned out, plaintiff: 1) told her therapist she was seeking new employment; 2) brought a tape recorder to work to monitor Laffler; and 3) had spoken with an attorney as to her future course of action), plaintiff was terminated on October 21, 2004 for reasons memorialized within Steven Pressman's contemporaneous exit interview notes to include being a "bad clinical judge", having "lack of confidence" and "incited clients".

Yet, plaintiff's counsel summarily concludes on this record that "the obvious and only conclusion to be drawn is that he (Pressman) was motivated to terminate the plaintiff because of the racial accusation she reported..."

To the contrary, under the totality of the circumstances, and based upon the case law cited herein, defendants respectfully request that this Court grant Summary Judgment

3

dismissing the unlawful discrimination/termination (Federal and State), hostile work environment and retaliation claims herein on behalf of defendants.

In short, plaintiff's unsubstantiated claim of **one** alleged racial epithet being spoken to her by a direct supervisor in the face of indisputably mounting difficulties in meeting the demands of her new Assistant Program Director position and corresponding breach of her ethical responsibilities should be insufficient to withstand Summary Judgment being granted on behalf of Defendants as a matter of law.

4

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED IN ITS ENTIRETY

The Court may grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).

In assessing the record to determine whether genuine issues of material fact are in dispute, Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. See, Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003); Nova Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

To establish a prima facie case of Title VII discrimination under the three-step burden-shifting analysis outlined by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817 (1973), a plaintiff must demonstrate that: (1) he/she is a member of a protected class; (2) he/she is qualified for the position in question; (3) he/she suffered an adverse employment action; and (4) the surrounding circumstances give rise to an inference of discrimination based on the plaintiff's membership in the protected class. See Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); see, also, Thomas v. Westchester County Health Care Corp.,

5

232 F.Supp.2d 273, 278 (S.D.N.Y. 2002). "The burden of establishing a prima facie case is a modest one, but it has substance nevertheless." Viola v. Philips Med. Sys., 42 F.3d 712, 716 (2d Cir. 1994).

The requirement that a plaintiff be qualified should not be measured by a plaintiff's subjective assessment of his own qualifications. See Dawson v. Bumble & Bumble, 246 F.Supp.2d 301, 321 (S.D.N.Y. 2003), aff'd 398 F.3d 211 (2d Cir. 2005). Instead, the standard should be gauged against the employer's specified criteria, including whether plaintiff demonstrated "satisfactory job performance" at the time of his termination. Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997); see also Smith v. K & F Indus., 190 F.Supp.2d 643, 648 (S.D.N.Y. 2002).

In order to establish a prima facie case of retaliation, a plaintiff must prove that: (1) he was engaged in a protected activity; (2) defendants were aware of the protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998); Distasio v. Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir. 1998); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996); Gordon v. New York City Bd. of Ed., 232 F.3d 111, 116 (2d Cir. 2000).

"A plaintiff must show a causal connection between an alleged retaliatory act and his protected activity, and if temporal proximity is the only evidence of causation, the two incidents must be close in time." Heredia v. Small, 2006 WL 47667 (S.D.N.Y. 2006). "A substantial time lag between the protected activity and the adverse employment action suffices to defeat an inference of retaliatory animus." Allen v. St. Cabrini Nursing Home, Inc., 198 F.Supp.2d 442, 450 (S.D.N.Y. 2002); see, also, Griffin v. Ambika Corp., 103

6

F.Supp.2d 297, 312 (S.D.N.Y. 2000) (granting defendants summary judgment on African-American plaintiffs' retaliation claims, explaining that "timing alone is insufficient to meet plaintiff's prima facie burden of showing retaliation burden").

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001).

Where there is an extended period of time during which the employer did not take any action against the employee, Courts often find that the plaintiff cannot establish a causal connection because a connection becomes far less likely. See e.g. Gelin v. Snow, 2005 WL 2456742 (S.D.N.Y. 1005); Little v. Nat'l Broad. Co., 210 F.Supp.2d 330, 338 (S.D.N.Y. 2002); Allen v. St. Cabrini Nursing Home, Inc., 198 F.Supp.2d 442, 450 (S.D.N.Y. 2002); see also Opoku-Acheampong v. Depository Trust Co., No. 99 Civ. 0774, 2005 WL 1902847, at *3 (S.D.N.Y. 2005) ("[S]tray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority.") (citations omitted).

If the plaintiff makes out a prima facie case, discrimination is presumed and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981). This burden, like plaintiff's initial burden to establish a prima facie case, "is not a demanding one; [defendant] need only offer ... an explanation for the employment decision." Bickerstaff v. Vasser College, 196 F.3d 435, 446 (2d Cir.

7

1999) (citation omitted).

If the defendant meets this burden, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reasons were merely a pretext for discrimination and that its conduct under the circumstances gives rise to an inference of discrimination. See Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). Put another way, plaintiff must offer admissible evidence to show that the employer's proffered explanation for the termination is false, and merely a pretext for retaliation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993).

In this regard, the Court must examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

While the burden shifts back and forth, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000) (citations omitted).

Where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred", the employer is entitled to judgment as a matter of law. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097 (2000); O'Hara v. Memorial Sloan-Kettering Cancer Center, 2002 WL 31834438 (S.D.N.Y. 2002) (granting employers' motion for summary judgment because there is no evidence to

8

demonstrate that the Hospital's legitimate, non-discriminatory reason is false or that the hospital was motivated by discrimination).

Mere personality conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws "become a general civility code". Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998) (citation and internal quotation marks omitted); see also Gorley v. Metro-North Commuter R.R., 2000 WL 1876909, *7, 2000 U.S. Dist LEXIS 18427, *25-26 (S.D.N.Y. 2000) ("Even if [plaintiff's supervisor] did harbor personal animosity against plaintiff...Title VII provides relief only for racial discrimination, not fickleness"), aff'd. 29 Fed.Appx. 764 (2d Cir. 2002); Gibson v. Brown, 1999 WL 1129052, *12, 1999 U.S. Dist LEXIS 18555, *34 (E.D.N.Y. 1999) ("Personal animosity is not the equivalent of...discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a...discrimination case by accusation" [citations omitted]); affd. 242 F.3d 365 [table; text at 2000 WL 1843914, 2000 U.S. App LEXIS 33119 (2d Cir. 2000)]; Padob v. Entex Info. Serv., 960 F.Supp. 806, 813 (S.D.N.Y. 1997) ("It might be just as likely that Plaintiff was excluded because of her acknowledged personality conflict with [her supervisor]- - but such behavior is not prohibited by (antidiscrimination laws)").

A racially hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993); see also Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) (discussing Title VII hostile work environment claim).

To survive summary judgment on a hostile work environment claim, a plaintiff must

9

first show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of ... [the plaintiff's] working environment." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). "The true question to be considered is thus whether plaintiff's allegations, in context, show a workplace 'permeated with discriminatory intimidation, ridicule and insult.'" Chandler v. AMR Am. Eagle Airline, 251 F.Supp.2d 1173, 1185 (E.D.N.Y. 2003).

The United States Supreme Court has held that occasional off-color or inappropriate remarks with racial or sexual undertones do not alone create a hostile work environment under Title VII. See, Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271-72, 121 S.Ct. 1508 (2001).

For racial comments to constitute a hostile work environment, plaintiff must prove "more than a few isolated incidents of racial enmity." Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986). "[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Brown v. Coach Stores, Inc., 163 F.3d 706, 713 (2d Cir. 1998) (no hostile work environment where supervisor made, on occasion, racist remarks, including one directed at the plaintiff).

Within their motion for partial summary judgment, plaintiff's counsel posits only three basic points:

1)   "Plaintiff received ... no warnings prior to complaining of race discrimination";

2)   "Pressman's handwritten notes and deposition testimony erase any doubt that he fired the plaintiff for having made a complaint of race discrimination";

10

and

3)    "Defendants have no admissible evidence to offer a non-retaliatory reason
      for having fired the Plaintiff..."

Most respectfully, each of these contentions by plaintiff's counsel is self-serving
distortion of the facts and documentary evidence before this Court.

As reflected within the documentary evidence (both exhibits and deposition
testimony), plaintiff's unsubstantiated allegation of one racial slur made by her immediate
supervisor during a telephone call from home was only reported _after_ plaintiff experienced
mounting difficulties with her performance in her new full-time Assistant Program Director
position at Florence Manor (memorialized on several occasions in writing by Karen Laffler).

In short, the complete inability of plaintiff to perform her full-time probationary job
(essentially the first one in her adult life) in a satisfactory fashion was a legitimate, non-
discriminatory basis for her October 21, 2004 termination which supports the Cross-Motion
for summary Judgment herein.

11

## CONCLUSION

For the reasons set forth herein, defendants respectfully request that the Cross-Motion for Summary Judgment be granted in its entirety, along with such other and further relief as this Court may deem just and proper under the circumstances.


Respectfully submitted,

**O'CONNOR, REDD & SKLARIN, LLP**

By: _____

Richard S. Sklarin (RSS 1017)
Attorneys for Defendants
200 Mamaroneck Avenue
White Plains, New York 10601
(914) 686-1700

**DATED:**    August 14, 2006
White Plains, New York

12